## Kessler et ux. v. Eisenlohr

*Fox & McTigue*, for plaintiffs; *Ralph J. Rinalducci*, for defendant.

CORSON, J., January 25, 1935.—Plaintiffs brought suit against defendant for damages received as a result of the alleged negligent operation of the defendant's automobile. After the statement of claim had been filed and served, indorsed with the proper notice to file an affidavit of defense within 15 days after service thereof, no affidavit of defense having been filed within the required

time, the case was treated by the prothonotary as at issue, placed upon the issue list, and subsequently marked for trial.

In the statement of claim, the defendant's automobile was alleged to have been operated by defendant or his agent, employe, etc. The præcipe for summons in trespass was issued on November 15, 1933, and on January 11, 1934, Ralph J. Rinalducci, Esq., entered his appearance for the defendant.

On March 20, 1934, the case was listed for trial but continued at the request of defendant's counsel under agreement with the counsel for the plaintiffs. At the preliminary call of the trial list on October 11, 1934, of cases to be tried beginning with the week of October 15th, counsel for the plaintiffs answered ready, and defendant's counsel did not appear.

On October 12, 1934, a holiday, counsel for the plaintiffs received from counsel for the defendant a copy of an affidavit of defense in which the agency averred in the plaintiffs' statement was denied. On Monday, October 15, 1934, the case was the first case called for trial. At that time, counsel for the plaintiffs orally moved to strike off the affidavit of defense as not having been properly filed, this motion was sustained by the trial judge, and the affidavit of defense stricken off. The case proceeded, and the jury returned verdicts in favor of Max D. Kessler in the sum of $275, and in favor of his wife for $25.

The present motions were then filed by the defendant based upon the two main contentions, first, that the trial judge erred in striking off the affidavit of defense, and, second, that error was committed in the admission of testimony concerning the loss of earnings claim of Max D. Kessler. If the agency of the driver of defendant's car is admitted, counsel for both parties would seem to be in agreement that the question of defendant's negligence and plaintiff's contributory negligence, if any, were purely questions of fact for the jury, and that their finding upon these questions is in accord with perhaps the weight of the testimony in the case.

Section 12 of the Practice Act of May 14, 1915, P. L. 483, as amended by the Act of March 10, 1921, P. L. 16, provides: "The defendant shall file an affidavit of defense to the statement of claim within fifteen days from the day when the statement was served upon him." Section 13 of the same act as amended by the Act of April 4, 1929, P. L. 140, provides: "In actions of trespass the averments, in the statement, of the person by whom the act was committed, the agency or employment of such person, the ownership or possession of the vehicle, machinery, property or instrumentality involved, and all similar averments, if not denied, shall be taken to be admitted in accordance with section six".

The defendant's contention is that he had the right to file an affidavit of defense at any time irrespective of whether or not it was filed within the 15-day period provided by the Practice Act. Defendant relies upon decisions of the Supreme Court of Pennsylvania that in actions of assumpsit an affidavit of defense may be filed at any time prior to the entry of judgment for want thereof by the plaintiff. In the case of trespass, however, it would seem that if no affidavit is filed by the defendant within 15 days after service, certain facts are admitted, and the plaintiff is not required to prove such facts. The case is then at issue. The trespass action differs from the assumpsit action in that the assumpsit case becomes at issue only after the filing of an affidavit of defense.

We feel, therefore, that in trespass actions, the rulings of the Supreme Court with reference to filing of affidavits of defense in assumpsit cases do not apply.

Upon the direct question here involved, it would seem that there are no appel-

late court decisions. Defendant relies upon various county court decisions, and the plaintiffs rely upon other lower court decisions holding to the contrary. Even in the cases relied upon by the defendant, however, it would seem that an affidavit of defense filed after the 15-day period must be with leave of court and upon cause shown. It would further appear that even upon cause shown and upon petition for leave to file an affidavit of defense, no substantial rights of the plaintiff must be adversely affected.

Among the latest of the lower court decisions is the case of Vangelos et ux. v. Golder Construction Co. et al., 18 D. & C. 403 (Philadelphia County 1933), where Judge Alessandroni struck off affidavits of defense filed in a trespass action "without leave of court first obtained for cause shown." See also Maimon et al. v. Yellow Cab Co. et al., 16 D. & C. 438; Gross v. Dickinson, 4 D. & C. 505.

Defendant's counsel seemed to agree at the argument that perhaps the affidavit of defense should have been stricken off but that if it was so done it should have been done without prejudice to the rights of the defendant to apply for leave to file an affidavit of defense nunc pro tunc. If the trial judge was correct in striking off the affidavit of defense because it had been filed without leave of court and without cause shown, the right of the defendant to file a petition for leave to file an affidavit of defense nunc pro tunc could not be affected whether the trial judge had stated that he struck off such affidavit without prejudice or whether he merely struck it off without saying anything further.

However, at the time the motion was made, the trial judge asked counsel why the affidavit of defense had not been filed, and he stated that he had been busy at the time of the first trial with other litigation, and that he had merely forgotten to file it. If counsel had had the affidavit prepared and through an oversight had neglected to bring it from his office to the office of the prothonotary, there might be more sympathy with his position. However, the affidavit of defense appears to have been sworn and subscribed to on October 10, 1934, almost 9 months after the entry of counsel's appearance for the defendant, and a considerably longer time after the starting of suit and service upon the defendant.

It is very doubtful whether, even if the defendant had filed a petition for leave to file nunc pro tunc, upon counsel's statement defendant would have been able to make out a case that would have warranted the granting of such leave. If the defendant is correct in his contention that he may file at any time before the verdict of the jury is rendered, defendant would be able to absolutely clog the machinery of the courts in trespass cases by filing affidavits of defense, and putting the plaintiff to proof of facts that had been admitted by the pleadings for perhaps several years before the trial of the case. Under such conditions, the plaintiff might have lost contact with the necessary witnesses to prove agency, and would certainly be prejudiced in his efforts to prove the agency or any other fact denied by the affidavit of defense.

Defendant's contention was that the plaintiffs should have taken a rule to strike off the affidavit of defense. We feel that the trial judge was correct in ruling that the burden rested rather upon the defendant to sustain the filing of the affidavit of defense rather than to place upon the plaintiff the burden of taking a rule rather than a motion to strike off. So far as the record appears, the trial judge merely struck from the record a pleading improperly filed. We feel that under the rule laid down in Vangelos et ux. v. Golder Construction Co. et al., supra, and other similar cases, the action of the trial judge was proper. It follows that the affidavit of defense was properly stricken off under the pleadings as they stood at the time of the trial, and it was the duty of the trial

judge to state to the jury during the presentation of the plaintiff's case that the agency of the operator of defendant's car was admitted: Buehler v. United States Fashion Plate Co., 269 Pa. 428.

The defendant's contention in support of his motion for judgment n.o.v. being based solely upon the theory that the affidavit of defense denying agency was improperly sticken off, and that contention having been decided against the defendant, it follows that the evidence of agency was sufficient under the pleadings, and the motion for judgment n.o.v. must be refused.

The plaintiff was an engraver working for himself, and for several months prior to the accident had not employed a helper. He estimated his weekly earnings at $50 per week, but admitted that he did not have any books to show his income or expenses. It is the contention of the defendant that plaintiff should have been able to show by book entries the amount of cash he took in each week and the expenses of that particular week, and that after he had shown his net earnings for a period of weeks, the length of such period not being set forth by the defendant, an average of such earnings should be struck, and plaintiff should be allowed the loss of such average earnings during the period he was incapacitated as a result of his injuries.

Even if the defendant had had sufficient books to show his net income over a period of weeks or perhaps, months, we feel that the jury should not be dragged into an endless discussion over various items in book accounts. A laborer who is earning money is always allowed to testify that he was receiving at the time of his injury a certain weekly salary from his employer. It is never required that the employe should bring in his employer's books to show that he received that much money although such testimony might well be a matter of rebuttal if there should be any doubt in the mind of defendant as to the truth of plaintiff's assertion.

A jury may well have found that this plaintiff is familiar with his business, knew what his average income was, his average expenses, and the value of his services as an engraver. His testimony that he lost $50 per week as a result of being unable to perform his usual work as an engraver would not seem to be exorbitant. Even a third party who had knowledge of the plaintiff's business, and of the manner in which he conducted it, might have been competent as to the value of plaintiff's services: Simpson v. Pennsylvania R. R. Co., 210 Pa. 101, 104: See also Baxter v. Philadelphia & Reading Ry. Co., 264 Pa. 467.

Without allowing any item in favor of the husband plaintiff for pain and suffering and the loss of the society and comfort of his wife, the plaintiff showed as liquidated damages $135 for loss of his automobile, doctor's bill of $60.00, and a hospital bill for x-ray $5, making a total of $200 without the item of $375 for loss of earnings which he claims at $50 per week from July 17 to September 8, 1933.

The jury returned a verdict in favor of the plaintiff for only $275 and it would seem that if it allowed the plaintiff merely for the loss of his automobile and hospital expenses, it allowed him only the further sum of $75 for his loss of earnings, pain and suffering, etc. Certainly, an engraver working at his trade would seem to be entitled to at least $10 per week for approximately 7½ weeks' loss of earnings. So far as the damages are concerned, we feel that the verdicts were not excessive and were rather less than might have been expected. . . .

And now, January 25, 1935, for the reasons given in the foregoing opinion, the defendant's motions for a new trial and for judgment non obstante veredicto are refused, and the prothonotary is directed to enter judgment on the verdicts upon payment of the verdict fees. An exception is allowed to the defendant.                    From Aaron S. Swartz, Jr., Norristown, Pa.