# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 18, 2012 Session

## SISCO AND CLOSE PROPERTIES v. C & E PARTNERSHIP

**Direct Appeal from the Chancery Court for Wilson County**
**No. 09098      Royce Taylor, Judge, Sitting By Interchange**

**No. M2012-00400-COA-R3-CV - Filed December 28, 2012**

This is an action for breach of contract to purchase real property.  The trial court found that a valid contract existed between the parties and that Buyer breached the contract.  The trial court found that Seller failed to prove general damages, however, where Seller failed to prove the  fair market value of the real property at the time of breach.  The trial court further found that Buyer was entitled to a credit against special damages proven by Seller, and that Seller was not entitled to attorney's fees as the prevailing party where the provision for attorney's fees had been crossed out on the standard form contract.  Seller appeals and Buyer cross-appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Russell B. Morgan and Frankie N. Spero, Nashville, Tennessee, for the appellant, Sisco And Close Properties.

David W. Lawrence, David Blake Lawrence and Thomas Irvin Bottorff, Lebanon, Tennessee, for the appellee, C & E Partnership.

# MEMORANDUM OPINION[1]

This appeal arises from an action seeking damages for breach of contract to purchase real property filed by seller Sisco and Close Properties ("Sisco & Close") against buyer C & E Partnership ("C&E") in the Chancery Court for Wilson County. The following background facts are not disputed. On September 10, 2008, the parties executed a Lot/Land Purchase and Sale Agreement pursuant to which C&E agreed to purchase a tract of land in Lebanon, Tennessee, from Sisco and Close. The agreement recited a sales price in the amount of $550,000 and a closing date of October 9, 2008. The standard "Tennessee Association of Realtors F10 Lot Land Purchase and Sale Agreement" ("the agreement" or "the contract") executed by the parties was modified to exclude several provisions contained in the standard form agreement. The agreement contained a clause stating that time was of the essence. The contract provided that the parties' agreement was not contingent on an appraised value and that it contained no financial contingency. The agreement also provided that it constituted the sole and entire agreement between the parties, and recited no "special stipulations." C&E paid earnest money to Sisco and Close in the amount of $25,000. C&E did not close on the property on October 9, 2008. On December 11, 2008, the property was sold at auction for a sales price in the amount of $350,000.

Sisco and Close filed its complaint for damages on March 11, 2009. In its complaint, Sisco and Close asserted that it had suffered damages in the amount of $202,294.95 as a result of C&E's breach of the parties' September 2008 contract. It prayed for damages in the amount of $202,294.95. Sisco and Close further asserted that, under the parties' agreement, it was entitled to attorney's fees and costs incurred in pursuing its claim.

C&E answered on July 6, 2009, admitting that it entered into the agreement and asserting that the agreement was not valid or enforceable where Sisco and Close did not own the real property when the agreement was executed. C&E admitted that it did not close on the property on October 9, 2008, but denied that it had any duty to close. C&E denied any wrong doing and further denied that Sisco and Close had a right to attorney's fees under the agreement. It also asserted that Sisco and Close was not entitled to retain earnest monies paid by C&E because Sisco and Close did not own the property when the agreement was executed and because the property subsequently was sold to another party.

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

C&E additionally asserted that Sisco and Close had represented that a third party desired to purchase perpetual billboard easements on the property for a purchase price of $95,000. It asserted that Sisco and Close's false representation induced C&E to enter into the agreement, that it was a "basic and material assumption" of the agreement, and that the false representation "materially harmed the value of the property to be purchased." C&E asserted the defenses of failure to state a claim; implied waiver or equitable estoppel; unclean hands; mutual mistake; unilateral mistake; intentional or negligent misrepresentation; and anticipatory breach. C&E counterclaimed, asserting that Sisco and Close general partner Jim Sisco (Mr. Sisco) informed C&E's authorized agent, Kelli Cook (Ms. Cook), that Sisco and Close had current leases for billboards on the property that generated income in the amount of $10,000 per year. It asserted that Mr. Sisco additionally informed Ms. Cook that Lamar, TN, LLC, d/b/a Lamar Nashville ("Lamar") had offered to purchase perpetual billboard easements on the property at a purchase price of $95,000. C&E asserted that its offer to purchase the real property was based on the understanding that Lamar had offered to purchase the billboard easements, and that the Lamar offer was a material factor in its decision to enter the agreement. It submitted that Mr. Sisco provided a letter from Lamar dated July 19, 2006, in which Lamar offered to purchase the billboard easements, and that, subsequent to the execution of the September 2008 agreement, Lamar informed C&E that it did not intend to purchase the easements. C&E asserted that it refused to close on the property "based on this material failure of a basic and underlying factor in [its] decision to agree to purchase the Property." C&E additionally asserted that the property was not owned by Sisco and Close Properties, but by Mr. Sisco and Ben Close (Mr. Close), individually, as tenants in common. It also asserted that the actual size of the property was approximately three-fourths of an acre less than the size recited in the contract to purchase. C&E asserted that a failure of consideration therefore existed, and that it was relieved of its duty to purchase the property and entitled to damages from Sisco and Close. C&E asserted claims of intentional misrepresentation, fraud in the inducement to contract, negligent misrepresentation, frustration of purpose, negligence, unjust enrichment, promissory estoppel and detrimental reliance, conversion, negligence *per se*, and breach of contract. It prayed for rescission of the agreement; a declaration that the agreement was null and void; return of all earnest monies; attorney's fees and costs; and punitive damages.

Sisco and Close filed a motion for summary judgment on August 3, 2010.[2] In its

_____

[2]We note that neither Sisco and Close's motion for summary judgment and statement of undisputed facts nor C&E's response thereto were made part of the record transmitted to this Court on appeal. Upon review of the record, we determined that they were necessary for our review of this matter. We accordingly ordered the clerk of the trial court to transmit Sisco and Close's motion for summary judgment and C&E's response to this Court. The supplemental record was received by the Western Section in Jackson on December 18, 2012.

motion, Sisco and Close asserted that the undisputed facts demonstrated that C&E breached the parties' agreement and that it had suffered damages in the amount of $227,294.95. It further asserted that the undisputed facts demonstrated that there was no evidence to support C&E's defenses or counterclaims. C&E responded on September 17, 2010, asserting that genuine issues of material fact existed with respect to whether a mutual mistake or unilateral mistake justified its failure to perform under the contract. C&E further asserted that a mistake existed with respect to statements made by Mr. Sisco regarding the Lamar offer, and that "[t]he contract was contemplated by both Plaintiff and Defendant with either the mutually mistaken belief that there was an outstanding offer or the matter was misrepresented by Jim Sisco."

Following a hearing on October 29, 2010, on November 19 the trial court entered an order awarding Sisco and Close summary judgment on all issues except the issue of damages, which the trial court specifically reserved. In its order, the trial court held that parol evidence was not admissible in this case to demonstrate that the alleged offer by Lamar to purchase an easement on the property was part of the parties' agreement where the contract included an integration clause, which provided that the agreement constituted the sole and entire agreement of the parties, and that no representation, promise or inducement not included in the agreement was binding upon any party. The trial court determined that the agreement was enforceable as written, and that Sisco and Close was entitled to summary judgment on the issues of existence of a contract and breach of contract.

Following a hearing on damages in December 2011, the trial court found that, although the parties stipulated as to the amounts contained in Sisco and Close's "summary of damages," Sisco and Close failed to prove general damages where it failed to carry its burden to prove the fair market value of the real property on October 9, 2008, the date of breach. The trial court found that Sisco and Close was entitled to special damages in the amount of $27,294.95; that C&E was entitled to a credit in the amount of $25,000 in earnest money; and that the parties had stipulated that C&E was entitled to an additional credit in the amount of $16,500 for title expenses. The trial court found that, because the credits to C&E exceeded the amount of special damages incurred by Sisco and Close, Sisco and Close was not entitled to a judgment. The trial court further found that the parties had modified the standard form agreement to omit the default provision that provided for an award of attorney's fees to the prevailing party where the parties had marked an "X" through a section of the contract that contained the provision. It held that Sisco and Close was not entitled to attorney's fees under the agreement. The trial court entered its order on damages on January 30, 2012, and Sisco and Close filed a timely notice of appeal to this Court. Oral argument of the matter was heard by the Western Section of this Court sitting in Nashville on September 23, 2012.

## Issues Presented

Sisco and Close presents the following issues for our review:

(1)     Whether the trial court erred in holding that Sisco and Close Properties did not prove the fair market value of the property at the time of C&E Partnership's breach of the Land/Lot Purchase and Sale Agreement executed by the parties, and therefore, was not entitled to recover general damages for C&E Partnership's breach of that Agreement?

(2)     Whether the trial court applied the wrong measure of damages in evaluating Sisco and Close Properties' claim for damages arising from C&E Partnership's breach of the Land/Lot Purchase and Sale Agreement?

(3)     Whether the trial court erred in awarding C&E Partnership a credit of $16,500 for "title expenses paid" against Sisco and Close Properties' damages?

(4)     Whether the trial court erred in holding that Paragraph 10 of the Land/Lot Purchase and Sale Agreement (particularly the attorney's fees provision) had been stricken from the Agreement?

C&E presents the following additional issue for review:

Whether the trial court erred in holding that a valid contract between the parties [existed] since the trial testimony of both parties indicated there was no meeting of the minds on a material issue.

## Standard of Review

Appellate review of the factual findings of a trial court sitting without a jury is *de novo* upon the record, accompanied by a presumption of the correctness unless the preponderance of the evidence is otherwise. *E.g., Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012); Tenn. R. App. P. 13(d). Insofar as the trial court's factual findings are based upon its assessment of the weight and credibility of live testimony, we afford considerable deference to the trial court. Because the trial court is in the best position to assess the demeanor of witnesses and "other indicators of credibility," we will not reverse a trial court's determination of credibility absent clear and convincing evidence to the contrary. *Id.* Appellate review of a trial court's conclusions of law, however, is *de novo*

with no presumption of correctness. *E.g., Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).

### *Discussion*

As stated above, the trial court awarded summary judgment to Sisco and Close on all issues with respect to the existence and enforceability of the parties' contract, reserving only the question of damages. We note, however, that the question of whether the parties excluded the default provision from the form contract was adjudicated by the trial court when it heard the issue of damages in December 2011. Thus, the issue of whether the contract contained a default provision entitling the prevailing party to attorney's fees was adjudicated not by summary judgment, but in the December 2011 hearing on the merits. The issues presented for our review by Sisco and Close require us to review the trial court's determinations on the question of damages and the trial court's construction of the contract with respect to the default clause. C&E's argument on cross-appeal is that the trial court erred by determining that a valid contract existed between the parties because there was no meeting of the minds on an essential term, specifically, the default provision.

### *General Damages*

We turn first to Sisco and Close's assertion that the trial court erred by determining that it failed to carry its burden to prove general damages where it failed to prove the fair market value of the property on October 9, 2008, the date of breach. In its January 2012 order, the trial court found that Sisco and Close presented conflicting evidence with respect to the value of the property on the date of the breach. It found that Sisco and Close's witness, Earnest Hill (Mr. Hill), an agent of the company that conducted the auction of the property in December 2008, testified that the real estate market was falling daily through the Fall of 2008 and through the time of auction. The trial court further found that Mr. Close's testimony regarding the fair market value of the property on October 9, 2008, was contradictory. It found that, although Mr. Close testified that the auction price of $350,000 was the fair market value on the date of breach, Mr. Close "also admitted that the value was falling through this time period." The trial court stated that C&E presented no proof of the fair market value at the time of breach, and found that the testimony demonstrated that there was a "continuing decline in the value of the property from the date of the contract to the date" of the auction in December 2008. It stated that it "[did] not have a starting point to determine the amount of decline" and that it was left to "speculate" with respect to the fair market value. The trial court further stated that whether the auction price represented the fair market value was questionable where no expert testimony was offered. The trial court determined that Sisco and Close had simply failed to carry its burden to demonstrate general damages where the evidence "left [the court] to speculate" as to the fair market value of the

property at the time of breach.

Sisco and Close contends that the trial court erred in this determination where 1) the evidence it presented at trial proved to a reasonable degree of certainty that the fair market value of the property was $350,000 at the time of breach; 2) the auction price was, in and of itself, evidence of the fair market value at the time of breach; 3) that Mr. Close's testimony regarding the fair market value at the time of breach was not contradicted by his own testimony or that of Mr. Hill; 4) that the trial court erred as a matter of law in holding that Sisco and Close was required to prove the fair market value at the time of the agreement or otherwise prove that it declined; and 5) that the trial court erred as a matter of law in holding that an expert opinion by a licensed appraiser was required to prove the fair market value at the time of breach. Sisco and Close asserts, in the alternative, that we should apply the "benefit of the bargain rule" to actions for breach of contract to purchase real property as urged by the dissent in *Tinkham v. Beasley*, No. M1999-02809-COA-R3-CV, 2000 WL 1727780 (Tenn. Ct. App. Nov. 22, 2000), or adopt a "falling market exception" to the general rule.

We turn first to the proper measure of damages applicable to this case. Tennessee courts have long held that the measure of damages in an action for breach of contract for the purchase of real property "is the value of the land at the time set for closing less the contract price." *Security Land Co., Inc. v. Touliatos*, 716 S.W.2d 918, 921 (Tenn. 1986)(citing *see Bubis v. Blackman*, 435 S.W.2d 492 (Tenn. App. 1968)). We observe that, on May 14, 2001, the Tennessee Supreme Court denied permission to appeal in *Tinkham*. Accordingly, to the extent that the dissent in that case urges a measure of damages that departs from the established rule, we decline to adopt that measure here. We further decline to adopt the so-called "failing market exception" where it does not appear to have been raised as an issue in the trial court. Arguments not made in the trial court cannot be raised for the first time on appeal. *E.g., Wickham v. Sovereign Homes, LLC*, No. W2011–02508–COA–R3–CV, 2012 WL 4358635, at *10 (Tenn. Ct. App. Sept. 25, 2012) (*no perm. app. filed*) (citations omitted).

We turn next to whether the trial court erred by finding that Sisco and Close failed to carry its burden to demonstrate general damages. It is well-settled that the party seeking damages carries the burden to prove them. *E.g., BankcorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006)(citation omitted). Absent proof of damages, "there can be no award of damages." *Id*. (quoting *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn.Ct.App.1982)). Courts may not award damages that are "based on mere conjecture or speculation." *Id*. (citation omitted). Damages arising from breach of contract are permissible when the plaintiff is not able to prove an exact amount of damages, but the evidence must enable the trier of fact "to make a fair and reasonable assessment of damages."

*Id*. (quoting *Wilson v. Farmers Chem. Ass'n, Inc.*, 444 S.W.2d 185, 189 (Tenn. Ct. App. 1969)). "'All that an award for damages requires is proof of damages within a reasonable degree of certainty.'" *Id*. (quoting *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App.1985) (citing *Wilson*, 444 S.W.2d at 189; *Acuff v. Vinsant*, 59 Tenn.App. 727, 443 S.W.2d 669, 674 (Tenn. Ct. App.1969))).

We begin our review of the record by noting that Mr. Sisco, the Sisco and Close partner who executed the agreement in September 2008, suffered a stroke and was released from rehabilitation approximately 30 days prior to the December 2011 hearing of this matter. Sisco and Close therefore chose not to call Mr. Sisco to testify upon direct examination. At the December 2011 hearing on damages, Mr. Close was asked on direct examination:

> [D]o you think that the 350,000 dollar sale price that was brought at the auction represents a fair market value of the property as of the date that the contract was supposed to close [on] October 9, 2008?

Mr. Close replied, "Yeah." Upon review of the transcript, we find that Mr. Close did not contradict this statement elsewhere in his testimony. Mr. Hill testified that he believed $350,000 was the fair market value for the property at the time of the sale. As the trial court found, Mr. Hill also testified that the real estate market was falling daily during the Fall of 2008, and that the falling market impacted the commercial real estate market "very much." Mr. Hill testified that $350,000 was the fair market value during the fourth quarter of 2008. Amon Ringemann (Mr. Ringemann), who called the auction of the property, testified that he considered $350,000 to be the fair market value of the property. Mr. Ringemann also testified that the falling market impacted the real estate market in Fall 2008 and that $350,000 was the fair market value during the period.

As the trial court noted, C&E offered no proof of the fair market value of the property on October 9, 2008. The entirety of the proof demonstrates that the real estate market began to decline in mid-September 2008, and that it continued to decline through the Fall of 2008. It is undisputed that the contract price for the property in September 2008 was $550,000. The unrefuted testimony of Mr. Hill and Mr. Ringemann, Sisco and Close's witnesses, was that the fair market value of the property in December 2008, following a rapid decline in the real estate market which began in mid-September 2008 and continued throughout the Fall of 2008, was $350,000. Mr. Close's opinion testimony was that the fair market value of the property on October 9, 2008, after improvement including grading and clearing of the lot, was $350,000.

Although a property owner is competent to testify to the value of his property, an owner's opinion is of little weight when it is based on pure speculation. *Airline Const. Inc.*

*v. Barr*, 807 S.W.2d 247, 256 (Tenn. Ct. App. 1990). We have stated, [t]here must be some evidence, apart from mere ownership, that this 'value' is a product of reasoned analysis." *Id.* There is nothing in the evidence to suggest that Mr. Close's testimony was based on anything other than mere conjecture in light of the testimony of Mr. Hill and Mr. Ringemann that the real estate market was in a period of rapid decline from mid-September 2008 through the date the property was sold at auction. We cannot say the evidence preponderates against the finding of the trial court that Sisco and Close simply failed to carry its burden to prove the value of the property on October 9, 2008, with any reasonable degree of certainty. We affirm the judgment of the trial court on this issue.

### *Special Damages*

Sisco and Close concedes that the trial court correctly found that it established special damages in the amount of $27,294.95, and that the trial court correctly found that C&E was entitled to a credit in the amount of $25,000 for earnest monies paid pursuant to the agreement. It asserts, however, that the trial court erred by finding that the parties stipulated that C&E was entitled to an additional credit in the amount of $16,500 for title expenses. It contends that the stipulated amount was for a seller's commission, and that a credit in the amount of $16,500, if applied at all, should be applied only to a general damage award. C&E, on the other hand, acknowledges that the stipulated credit was one for a seller's commission, and asserts that Sisco and Close stipulated that the amount would be reduced from the total damage award.

Upon review of the record, we note that counsel for Sisco and Close stated at the hearing of the matter:

> Your Honor, we'll stipulate to that. I think the number is 16,500 would be reduced from our total damage claim.

We additionally note that this stipulation was made in the context of opposing counsel's cross-examination of Mr. Close on the matter of costs incurred by Sisco and Close to obtain title insurance and costs associated with making the property attractive for sale at auction.

In its brief, Sisco and Close asserts that if this Court affirms the trial court's judgment that it has demonstrated only special damages, C&E "should not be entitled to $16,500 credit for seller's commission, because, under that scenario, Sisco and Close would not be receiving the benefit of its bargain and the situation would not be akin to full performance of the Agreement." Sisco and Close's argument, as we perceive it, is that such a credit or reduction for a seller's commission, if appropriate at all, is applicable to an award for general damages.

In its summary of damages, however, Sisco and Close includes damages arising from "total commissions from subsequent sale" in the amount of $21,000. As Sisco and Close concedes, had C&E closed as agreed in October 2008, Sisco and Close would have been obligated to pay a seller's commission in the amount of $16,500. Thus, although C&E cannot claim an actual "credit" for this amount against amount paid, Sisco and Close's damages arising from seller's commissions for which it was liable as a result of breach by C&E are properly reduced by $16,500, the amount of the commission for which it would have been liable had the breach not occurred. We affirm the judgment of the trial court on this issue.

### *Attorney's Fees*

Sisco and Close asserts that the trial court erred in determining that the Default provision entitling the prevailing party to attorney's fees was excluded from the parties' agreement. It further asserts that, because the trial court erred in its judgment on damages, Sisco and Close is entitled to an award of attorney's fees in this case. The term of art "prevailing party," for the purpose of recovering attorney's fees, applies to a party to whom the court has awarded relief on the merits of the party's claim. *Consol. Waste Sys., LLC v. Metropolitan Gov't of Nashville & Davidson County*, No. M2002–02582–COA–R3–CV, 2005 WL 1541860, at *46 (Tenn. Ct. App. June 30, 2005)(citing *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 600, 121 S.Ct. 1835, 183-40 (U.S. 2001). "[P]revailing party status does not turn on the magnitude of the relief obtained." *Id*. (citing *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 574 (1992)). However, a prevailing party is not "a litigant who left the courthouse emptyhanded." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 614, 121 S.Ct. 1835, 1845 (U.S. 2001)(Scalia, J, concurring)). For the purposes of recovering attorney's fees under contractual provisions like the provision at issue in this case, we have defined "prevailing party" as "'the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered.'" *Meredith v. Weller*, No. E2010–02573–COA–R3–CV, 2012 WL 219082, at *13(Tenn. Ct. App. Jan, 25, 2012) (*no perm. app. filed*) (quoting *Dairy Gold, Inc. v. Thomas*, No. E2001–02463–COA–R3–CV, 2002 Tenn.App. LEXIS 548, at *10, 2002 WL 1751193 (Tenn. Ct. App. July 29, 2002) (quoting Black's Law Dictionary 1188 (6th ed.1990))).

In this case, Sisco and Close's action was a claim for damages in the amount of $202,294.95. Sisco and Close did not successfully prosecute its claim where it failed to prove general damages or that it was entitled an award of special damages not offset by credits due C&E. The trial court dismissed Sisco and Close's claim without awarding a

judgment in its favor on its claim for damages. Accordingly, Sisco and Close would not be entitled to attorney's fees under a default provision. C&E asserts the trial court correctly determined that the provision was omitted, and does not assert that it is entitled to recover attorney's fees in this matter.

Absent limited exceptions not present here, if an action no longer provides a means of judicial relief to the prevailing party we will consider it moot. *Lufkin v. Board of Prof. Resp.*, 336 S.W.3d 223, 226 (Tenn. 2011). A case or issue that becomes moot during the course of litigation will be dismissed as moot. *Jacks v. City of Millington Bd. of Zoning*, 298 S.W.3d, 163, 175 (Tenn. Ct. App. 2009)(citation omitted). The appeal process is part of the course of litigation. *Clark v. Shoaf*, 302 S.W.3d 849, 854 (Tenn. Ct. App. 2008)(citations omitted).

In light of the foregoing, the issue of whether the trial court erred by determining that the default provision had been omitted by the parties is moot. *See Ray v.. Sadler Homes, Inc.*, No. M2011–01605–COA–R3–CV, 2012 WL 2150752, at *3, n.3 (Tenn. Ct. App. June 12, 2012) (*no perm. app. filed*) (stating that issue of whether the trial court erred by finding that defendant had breached the contract was moot where the trial court did not award damages arising from the breach). We likewise decline to address C&E's assertion that the trial court erred by finding that a valid and enforceable contract existed as moot in light of our holding.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs. Costs on appeal are taxed to the Appellant, Sisco and Close Properties, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE